(C. D. 409)

## B. A. McKenzie & Co. v. United States

United States Customs Court, Second Division

(Decided December 12, 1940)

*Lawrence & Tuttle* (*George R. Tuttle* of counsel) for the plaintiffs.

*Charles D. Lawrence*, Acting Assistant Attorney General (*Joseph E. Weil, Richard F. Weeks,* and *Joseph A. Howard, Jr.,* special attorneys), for the defendant.

Before TILSON, KINCHELOE, and DALLINGER, Judges

DALLINGER, Judge: This is a suit against the United States, arising at the port of Tacoma, brought to recover certain customs duties alleged to have been improperly exacted on a particular importation described in the invoice as "best quality band saw strip." Duty was levied thereon at the rate of 25 per centum ad valorem under the provision in paragraph 313 of the Tariff Act of 1930 for

"bands and strips of iron or steel, whether in long or short lengths, not specially provided for", plus 3/10 of 1 cent per pound under the provision in paragraph 315 of said act for such iron or steel strips when tempered, plus 8 per centum ad valorem, and 3 cents per pound on the chromium content in excess of 2/10 of 1 per centum, under the provisions of paragraph 305 of said act.

It is claimed that said articles are properly dutiable at the rate of 12 per centum ad valorem under the provision in paragraph 340 of said act for "steel band saws, finished or further advanced than tempered and polished," as amended by the trade agreement with Sweden (T. D. 47785, 68 Treas. Dec. 19 at p. 28).

At the first hearing in this case held at Tacoma, Wash., on July 31, 1939, before Keefe, Judge, the plaintiffs offered in evidence the testimony of Phil J. DeLorme, owner of the Northwestern Saw Works at Aberdeen, Wash. He testified that his company manufactured saws from band-saw strips; that the merchandise in the instant case was imported by his company; that at the time of its importation it measured 60.3 feet in length, 16¼ inches in width, and .115 inches in thickness, and that after importation the merchandise in question was manufactured into a band saw.

The witness then identified a piece of one of the imported strips, which piece measured 16½ inches in length, and which was admitted in evidence as exhibit 1.

The witness further testified that after importation teeth are cut along one edge by means of a power punch; that thereafter the length of the merchandise is cut according to order; that the article is then hammered flat and expanded at those points where it is short; that the teeth are then shortened and ground; that in its imported condition the merchandise was tempered and polished; that prior to importation the edges of the material had been ground in order to make it uniform, the process being known as "backing", and that he had never used merchandise like exhibit 1 for any other purpose than the manufacture of band saws.

On cross-examination the witness testified as follows:

By Mr. WEIL.

X Q. What is a saw?—A. I don't quite get you.

X Q. What is a saw?—A. You will have to put it a little plainer—

X Q. What business are you in?—A. I am in the saw business.

X Q. I am asking you, what is a saw?—A. Can't you put that a little plainer to me?

X Q. I will try to. You say you have manufactured saws?—A. Yes, sir.

X Q. And you have seen them in operation?—A. Yes, sir.

X Q. What does a saw do? What is the function of a saw?—A. Well, it cuts lumber, of course.

X Q. Has it teeth?—A. Right.

X Q. Has the merchandise in the condition as imported, teeth?—A. No.

X Q. Could you cut merchandise with the merchandise in the condition as imported?—A. No.

X Q. Would you say the merchandise, in the condition as imported, was a steel band saw?

Mr. TUTTLE. Objected to. He has already answered.

Judge KEEFE. He has already answered.

Mr. WEIL. That is all.

At the second hearing, held at Seattle, Wash., on November 13, 1939, before Cline, Judge, the Government offered in evidence the testimony of Roy Elwin Smith, an employee of the Vance Scales Co. He testified that his company manufactured and repaired saws; that the imported merchandise comes tempered and polished, and that it is then cut to length and toothed, after which it is benched, backed, ground, and swedged on the cutting teeth.

The witness was then shown exhibit 1 which he identified as bandsaw steel. He testified that such material varies in length up to 65 feet, but that he was unable to tell whether exhibit 1 was backed because the piece was too small.

On cross-examination the witness testified that material like exhibit 1 is always known as band-saw steel; that when it is received the first thing done to it is to cut teeth therein with a punch which punches out the steel; that the next step is to cut the material to the right length after which the two ends are welded together; that a band saw must be backed before it can be used to cut large logs, and that it was impossible from an examination of exhibit 1 to ascertain whether the edges had been backed.

On redirect-examination the witness testified that the process of grinding edges of material like exhibit 1 to make them smooth advances the material beyond tempering and polishing.

At the third hearing held at Tacoma on March 31, 1940, before Dallinger, Judge, the plaintiffs offered in evidence the testimony of the same Roy Elwin Smith who had previously appeared for the Government. He testified that in his opinion exhibit 1 had been ground on its two edges, and that when he testified at a previous hearing that he could not tell whether or not exhibit 1 had been backed because of its small size, he had reference to an entirely different process of backing.

On cross-examination the witness testified that the word "back" has a different meaning when used in the mill from that used by steel manufacturers, and that exhibit 1 in mill terminology was backed.

The plaintiffs then recalled the witness Phil J. DeLorme who testified that by backing he meant grinding the back of the material in order to make it perfectly uniform, and that he did not agree with the testimony of the witness Smith to the effect that backing consists of putting a crown on the back of the saw approximately $\frac{1}{32}$ or $\frac{1}{64}$ of an

inch for every 5 feet of length. On being shown two pieces of steel which were admitted as collective illustrative exhibit A, the witness stated that in his opinion the grinding of the edges constituted backing.

On cross-examination the witness testified that from the instant merchandise his company made a 54-foot saw, the additional 9 inches being treated as scrap.

. The plaintiffs then offered in evidence the testimony of James E. Morrison, who testified that he had been in the saw manufacturing business for 28 years; that he had manufactured band saws for the last 10 or 15 years; that after a plate has been tempered and flattened, it is then smithed, after which it is ground to thickness; that the flat surface is then polished and one side is backed; that backing consists of giving one side a true edge similar to the process by which a piece of lumber is given a true edge by running it through a planer; that both edges might be backed but there would be no object in so doing; that exhibit 1 is evidently backed on both sides; that the material is then cut to length, after which the teeth are punched; that the ends are then joined together by welding, after which it is put on an automatic grinder for the purpose of grinding the teeth, and that by grinding is meant that the saw is stretched out to shape so that it will vary approximately $\frac{1}{64}$ of an inch in every 5 feet.

On cross-examination the witness testified in part as follows:

X Q. In describing the stages you mentioned the first cut as the cutting that the steel is cut to length. Right?—A. Yes.

X Q. And what lengths?—A. It depends on the specifications.

\* \* \* \* \* \*

X Q. They are not all 54 feet in length after they are cut?—A. No.

X Q. Just one more question. I want a yes or no answer. Would you call Exhibit 1 a saw?—A. It is a piece of saw steel.

Mr. Weil. I move to strike out the answer as not responsive.

\* \* \* \* \* \* \*

Judge Dallinger. I think that may be stricken out. I think he can answer that question, whether that piece of steel is a saw in itself. Yes or no.—A. No, it is not a saw.

Judge Dallinger. What is it?

The Witness. It is a piece of saw steel.

On redirect examination the witness testified that a single-cut saw is a saw with teeth on one edge only, a double-cut saw being one having teeth on both edges; and that he knew of no other use for material like exhibit 1 than making band saws.

On recross-examination the witness testified that he had never seen a band saw without teeth.

Upon this record we hold that the plaintiffs have utterly failed to sustain their claim that the imported merchandise consists of saws within the meaning of paragraph 340 of the Tariff Act of 1930. At best, the proof shows that the imported material consists of band-saw

steel, tempered and polished, the edges of which have been ground, and which after importation is used exclusively in the manufacture of band saws. But the evidence falls far short of establishing that the merchandise as imported consists of band saws. The mere fact that the material is without teeth would exclude it from any ordinary or common understanding of what constitutes a saw.

Moreover, the witnesses for the plaintiffs, on cross-examination, admitted that the merchandise in its imported condition was not a saw, but consisted of pieces of band-saw steel.

The merchandise in question in its imported condition is merely material somewhat advanced in manufacture, and according to the testimony dedicated for use in the manufacture of band saws. But a plain piece of steel, however advanced in treatment as such, does not respond to any known definition of what constitutes a saw. Certainly it would have to have teeth cut therein before it could even remotely be recognized as a saw of any kind.

Even if it were possible, which it is not, to consider this material as advanced to a point of being a part of a steel band saw, it is to be noted there is no provision in said paragraph 340 for parts of saws. It is a well-established rule of customs law that parts of an article are not included within an *eo nomine* designation of the article itself. *Murphy & Co., et al* v. *United States*, 13 Ct. Cust. Appls. 256, T. D. 41201.

All claims of the plaintiffs are therefore overruled and the classification of the collector is affirmed. Judgment will be rendered accordingly.